Battle, J.,
 

 having stated the case as above, proceeded : — In examining the testimony taken and reported by the Clerk, we have thrown out of view every part of it which was objected to by the defendant’s counsel, and yet we think his Honor was full}’ justified in overruling the first exception.
 

 It was clearly proved by Mr. Phelps, that Alpheus Lawrence admitted to him that his father, Reuben Lawrence, at the time of his death, held notes against him, stating at the same time however, that he held a receipt against them. The paper purporting to be a receipt, signed by Reuben Lawrence, on the 15th May, 1841, which the relators allege to be the receipt alluded to by their father, expressly acknowledges the existence of such notes, then in the possession of the said Reuben. The existence of the notes being thus established, it became the duty of the relators to shew they were paid by their father in his life time. They contend that they have so done, by the declaration of the said Alpheus, made at the time that he acknowledged that his father held the notes; that he had a receipt against them; and by the production of the receipt itself. They then urge that what their father said in discharge, being said at the same time with the admission with which the defendant seeks to charge him, must be taken as true— a,t least until its falsity is shown.
 

 A Court when called on to determine facts upon testimony, is, like a jury, bound to taire into consideration all that a party may have said at the same time, but like a jury, it is at liberty to scrutinize the statement; and if it believes a part of the statement to be improbable, or at variance with other facts clearly established, it may reject such part, or hesitate in acting upon it, until other-proof is brought to sustain it. We think that the declaration made by Alpheus Lawrence, that he had paid the notes, and held a receipt against them, stands in this predicament: The receipt purports to have been given at Windsor, on the 15th day of May,
 
 *116
 
 1841 : Reuben Lawrence did not die until nearly two years after-wards; and he and his son lived in the county within four miles of each other; — yet no reason is assigned why the business was transacted in town, or why Alpheus did not call upon his father and take up the notes. Under such circumstances, we think it was incumbent upon the relators to prove the genuineness of the receipt or the payment of the money, by some other independent testimony. This they have not done. On the contrary, what testimony there is in relation to the receipt, increases the suspicion that it is not genuine, and that the money never was paid by Al-pheus, in discharge of the notes. The clerk was therefore right in debiting the estate of Alpheus with the whole amount of die principal and interest of the said notes.
 

 The second exception ought to have been sustained. The balance reported in the account of the estate of Reuben Lawrence, tire father, was composed of the proceeds of real estate, and though permitted to go into the hands of the administrator, ought to have been considered as real estate, in dividing it among the next of kin, who were the same persons as the heirs at law. As real, estate, advancements of personalty could not be taken into the account, in the distribution of it. The Act of 1844, ch. 51, which provides for bringing advancements of personalty into hotchpot, in the division of realty, did not affect the case, because Reuben Lawrence had died before its passage.
 

 The third exception is sustained to the extent of reducing the commissions on $2,500, the price received for the land, to
 
 2^ per cent.
 
 It is overruled for the residue.
 

 The report, after being reformed in the particulars above stated, will be, in all respects, confirmed.
 

 Per Curiam. Judgment accordingly.